**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WALDO E. WALDRON-RAMSEY,
            *Petitioner-Appellant,*

            v.

DAN PACHOLKE,
            *Respondent-Appellee.*

No. 07-35938

D.C. No.
CV-00131-RHW

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Robert H. Whaley, District Judge, Presiding

Argued and Submitted
December 10, 2008—Seattle, Washington

Filed February 25, 2009

Before: Robert R. Beezer, Senior Circuit Judge, and
Ronald M. Gould and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

David B. Zuckerman, Seattle, Washington, for the petitioner-appellant.

Paul D. Weisser, Office of the Attorney General, Olympia, Washington, for the respondent-appellee.

## OPINION

GOULD, Circuit Judge:

Waldo Waldron-Ramsey ("Waldron-Ramsey") appeals the district court's order denying equitable tolling of the statute of limitations on his 28 U.S.C. § 2254 petition for a writ of habeas corpus and dismissing the petition as barred because it was untimely. We affirm the district court's decision to deny equitable tolling and we affirm the district court's denial of the petition as time-barred.

## I

Waldron-Ramsey is a Washington state prisoner who was convicted of first degree murder in 1989. His direct appeal and personal restraint petition ("PRP") in Washington state court were denied in 1994, and a mandate issued showing finality. One basis for Waldron-Ramsey's direct appeal had

been the denial of his right to self-representation. *See Faretta v. California*, 422 U.S. 806, 820-21 (1975). In 1995 Waldron-Ramsey filed a second PRP in Washington state court on the grounds that he had recovered missing video evidence of his assertion of his right to self-representation. That PRP was dismissed in May 1996 by the Washington State Court of Appeals because the PRP was untimely; it was filed more than one year after the mandate issued on the denial of his prior PRP and Waldron-Ramsey did not meet the requirements of the "newly discovered evidence" exception. Waldron-Ramsey then filed a motion for discretionary review with the Washington State Supreme Court, which denied the motion in September 1996. In that denial, the Washington State Supreme Court Commissioner affirmed the Washington State Court of Appeals on its dismissal for untimeliness, but then said that even if the petitioner had the evidence that he claimed to have, he did not establish a *Faretta* violation. The certificate of finality issued on his second PRP on April 9, 1997.

On April 18, 1997, Waldron-Ramsey next filed a motion in federal district court to reopen a prior federal habeas corpus action that previously had been dismissed for failure to exhaust. In this motion, Waldron-Ramsey asserted that all of his state claims were now exhausted, and he requested that the district court reopen the prior habeas action so that he could meet his deadline under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") for filing his habeas petition.

Because Waldron-Ramsey's state conviction was finalized before AEDPA's enactment on April 24, 1996, his deadline to file a habeas petition under AEDPA was April 23, 1997. *See Miles v. Prunty*, 187 F.3d 1104, 1105 (9th Cir. 1999) (holding that a "prisoner with a state conviction finalized before April 24, 1996 . . . had until April 23, 1997 to file a federal habeas petition"). His April 18, 1997 motion had shown recognition of this deadline, yet Waldron-Ramsey did not file his federal habeas petition by the deadline. On Sep-

tember 29, 1997, the district court denied Waldron-Ramsey's motion to reopen his prior habeas petition. Finally, on March 29, 1998, Waldron-Ramsey delivered his federal habeas petition to prison officials. It was approximately 340 days late.

## II

The district court denied Waldron-Ramsey's habeas petition on the merits on July 8, 2003. Waldron-Ramsey appealed to the United States Court of Appeals for the Ninth Circuit, and on September 15, 2006, we held that Waldron-Ramsey's petition was untimely because he was not entitled to statutory tolling under 28 U.S.C. § 2254(d)(2). *Waldron-Ramsey v. Ryder (Waldron-Ramsey I)*, 202 Fed. Appx. 182, 182 (9th Cir. 2006). Section 2244(d)(2) provides for tolling of the AEDPA statute of limitations for "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending." However, Waldron-Ramsey's state petition was untimely, and the United States Supreme Court has explicitly held that an untimely state petition does not toll the AEDPA statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Although we therefore concluded that Waldron-Ramsey was not entitled to statutory tolling, we remanded to the district court to analyze the distinct issue whether equitable tolling might be appropriate. On remand, the district court held that Waldron-Ramsey was not entitled to equitable tolling.

Waldron-Ramsey appeals that order. We agree with the district court and affirm.[1]

## III

We review de novo the denial of a petition for a writ of

---

[1]Because of our decision that Waldron-Ramsey was not entitled to equitable tolling, that concludes our review of his untimely petition and we need not address the uncertified issues in this case.

habeas corpus brought under 28 U.S.C. § 2254. *Harris v. Carter*, 515 F.3d 1051, 1054 (9th Cir. 2008). We also review de novo whether the statute of limitations should be equitably tolled. *Id.*

# IV

**[1]** To receive equitable tolling, a petitioner bears the burden of showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418.² We have previously explained that "the threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). While Waldron-Ramsey argues that the Supreme Court's more recent formulation in *Pace* creates a permissive standard for equitable tolling, the Supreme Court's formulation is consistent with our sparing application of the doctrine of equitable tolling. To apply the doctrine in "extraordinary circumstances" necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances "stood in his way" suggests that an external force must cause the untimeliness, rather than, as we have said, merely "oversight, miscalculation or negligence on [the petitioner's] part, all of which

---

²The Supreme Court has not explicitly determined whether equitable tolling is allowed by section 2244(d). *See Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (assuming but not deciding that equitable tolling applies to section 2244(d)). We have held that it is. *See Harris*, 515 F.3d at 1054 n.4. The Supreme Court did hold, in *Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360, 2366 (2007), that a habeas petitioner's timely notice of appeal is a prerequisite to federal appellate jurisdiction, and therefore the federal courts are without power to make equitable exceptions to the time limit. However, we agree with the Second Circuit that *Bowles* did not invalidate equitable tolling of the AEDPA statute of limitations. *See Diaz v. Kelly*, 515 F.3d 149, 153-54 (2d Cir. 2008) (holding that the AEDPA statute of limitations is not jurisdictional); *Harris*, 515 F.3d at 1054 n.4 (holding, after *Bowles*, that the Ninth Circuit applies equitable tolling in the AEDPA context).

would preclude the application of equitable tolling." *Harris*, 515 F.3d at 1055.

Waldron-Ramsey advances two grounds for equitable tolling here: The first is his reasonable belief that he was entitled to statutory tolling because of uncertainty on the legal rules governing AEDPA and because of uncertainty on the grounds for the state court decision. The second is that his legal materials were confiscated, affecting his ability to petition for relief.

## A

**[2]** Waldron-Ramsey argues that he reasonably believed he was entitled to statutory tolling under 28 U.S.C. § 2244(d)(2), which tolls the AEDPA statute of limitations during the time a "properly filed application for State post-conviction or other collateral review . . . is pending." Waldron-Ramsey alleges that he believed he was entitled to statutory tolling until April 9, 1998—one year after the certificate of finality issued on his second state PRP—for two reasons: (1) he thought his second PRP was timely such that it would have tolled the statute of limitations, and (2) he thought that even if his second PRP was held to be untimely, it would still constitute a "properly filed application" so as to toll the AEDPA statute of limitations under section 2244(d)(2).

Waldron-Ramsey argues he believed his second state PRP was timely because the Washington courts reached the merits of his claim. Waldron-Ramsey's second PRP was denied by the Washington State Court of Appeals, which cited Washington Revised Code § 10.73.090(1), the statute of limitations for a PRP, and then stated that Waldron-Ramsey failed to satisfy the newly discovered evidence exception to the statute of limitations. In denying the petition for review, the Washington State Supreme Court noted that the petition had been dismissed as untimely, and cited Washington Revised Code § 10.73.090. However, the Washington State Supreme Court

Commissioner then said that "even if" Waldron-Ramsey had the evidence he claimed to have, that evidence did not establish a *Faretta* violation.

**[3]** Waldron-Ramsey claims that the Commissioner's discussion of the merits led him to believe his petition was timely, and would therefore toll the AEDPA statute of limitations. However, the Washington State Court of Appeals expressly told Waldron-Ramsey that his PRP was time-barred, and the Washington State Supreme Court did not hold otherwise. Rather, the Washington State Supreme Court Commissioner's discussion of the *Faretta* claim is most logically read in the alternative—the claim was untimely, but even if not, there was no merit to the claim. Waldron-Ramsey was not justified in assuming that his petition was timely and that he would therefore be entitled to tolling.

**[4]** Second, Waldron-Ramsey argues that even if he had known his state petition was untimely, he believed in 1997 and 1998 that an untimely petition would still be considered "properly filed" under AEDPA and would toll the AEDPA statute of limitations. The Supreme Court foreclosed this interpretation in 2005, holding that an untimely state petition does not toll the AEDPA statute of limitations. *See Pace*, 544 U.S. at 417. Waldron-Ramsey points out that we did adopt his reading—that even an untimely state petition can be deemed "properly filed" so as to toll the AEDPA statute of limitations —in 2001, before the issue was finally decided by the Supreme Court in *Pace*. *See Dictado v. Ducharme*, 244 F.3d 724, 728 (9th Cir. 2001) (holding that the untimely petition in that case tolled the AEDPA statute of limitations). However, *Dictado* was decided years after Waldron-Ramsey's alleged confusion; thus, unlike the petitioner in *Harris* who relied on *Dictado*, Waldron-Ramsey could rely on no precedent to support his reading at the relevant time. *See Harris*, 515 F.3d at 1055-56 (holding that a petitioner's reliance on *Dictado* justified equitable tolling).

**[5]** Neither Waldron-Ramsey's alleged confusion regarding the basis of the state court rulings, nor his alleged confusion regarding AEDPA justify his 340-day delay. In a motion filed April 18, 1997, Waldron-Ramsey explicitly stated he knew his AEDPA deadline was April 23, 1997.[3] His alleged belief he was entitled to statutory tolling beyond that date was based on his own assumptions, and a diligent petitioner in that situation would have filed a basic form habeas petition as soon as possible. Waldron-Ramsey's strategy to wait 340 days to file, in the hopes that any ambiguities would ultimately be resolved in his favor, is the kind of "oversight, miscalculation or negligence" for which equitable tolling is not appropriate. *Harris*, 515 F.3d at 1055.[4] Because we hold that Waldron-Ramsey was not diligent in the filing of his federal habeas petition, we need not decide whether confusion about AEDPA law or confusion about what action the state court has taken can ever be the type of extraordinary circumstance that may warrant equitable tolling.

---

[3]On April 18, 1997, Waldron-Ramsey filed a motion to reopen a previous federal habeas petition that had been dismissed for failure to exhaust, stating that he needed to reopen the previous petition so he could meet the AEDPA deadline of April 23, 1997. Therefore, he clearly knew that April 23, 1997 was his AEDPA deadline absent tolling. Waldron-Ramsey emphasizes that the district court did not address that motion to reopen until September 29, 1997, at which time it was too late to file a timely petition. We need not reach whether this delay would warrant equitable tolling for any of the period of time up to September 29, 1997, because Waldron-Ramsey's delay from that date until March 29, 1998 itself shows inadequate diligence to warrant equitable tolling.

[4]Waldron-Ramsey also claims that his delay was warranted because he was a pro se petitioner and he believed he was required to file a thorough habeas brief explicating all of his claims in full and would not be able to amend his petition at a later date. While Waldron-Ramsey's pro se status is relevant, we have held that a pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). The district court also expressed significant skepticism about Waldron-Ramsey's alleged ignorance, pointing out that Waldron-Ramsey is a seasoned litigant who has filed more than 21 lawsuits in the Eastern District of Washington alone.

**B**

Waldron-Ramsey also argues that he was deprived of his legal materials and was unable to conduct the necessary research to develop his habeas petition. Deprivation of legal materials is the type of external impediment for which we have granted equitable tolling. *See Lott v. Mueller*, 304 F.3d 918, 924-25 (9th Cir. 2002). But Waldron-Ramsey bears the burden of showing his own diligence and that the hardship caused by lack of access to his materials was an extraordinary circumstance that caused him to file his petition almost a year late. *Pace*, 544 U.S. at 418. He does not meet this burden.

**[6]** Waldron-Ramsey was allowed to retain three boxes of legal materials, with the remainder stored for him either in the prison or with his counsel such that he would have access to them upon request. Waldron-Ramsey was uncooperative, refused to sign the release of the materials, and refused to consolidate the most relevant materials into the three boxes he was allowed to have at a time. Waldron-Ramsey cannot be heard to claim that he acted diligently in response to an otherwise reasonable prison policy when his lack of cooperation contributed significantly to any hardship that he may have faced.

Waldron-Ramsey asserts that he needed all of his 15,000 pages of materials at all times so that he could cross-reference documents. He also claims that he could not exchange materials because shipping was too expensive for him. We accept Waldron-Ramsey's contention that certain documents were more relevant to developing certain claims. Nevertheless, Waldron-Ramsey does not point to specific instances where he needed a particular document, could not have kept that document within his permitted three boxes had he been cooperative, and could not have procured that particular document when needed. Waldron-Ramsey's situation is distinguishable from *Lott*, where the petitioner filed his petition only seven

days late despite being deprived of all of his files for at least 82 days. *Lott*, 304 F.3d at 924-25.

**[7]** Moreover, even if Waldron-Ramsey may have faced some difficulty developing his claims without constant possession of all of his records, he has not adequately explained why he filed 340 days after his AEDPA deadline. If diligent, he could have prepared a basic form habeas petition and filed it to satisfy the AEDPA deadline, or at least could have filed it less than 340 days late assuming that some lateness could have been excused. From 1994 to 1997 he had access to all of the documents necessary for his *Faretta* self-representation claim. He could have developed that argument, outlined the other arguments and the facts underlying those arguments on the form habeas petition, and then sought to amend his petition when he got more information. We conclude that Waldron-Ramsey did not exercise due diligence and that his argument regarding access to legal materials lacks merit. Therefore, equitable tolling is inappropriate.

## V

The Supreme Court and the policies behind AEDPA require that equitable tolling be used only to protect diligent petitioners facing extraordinary circumstances that prevent them from timely filing federal habeas petitions. *Pace*, 544 U.S. at 418. The exception for equitable tolling cannot be interpreted so broadly as to displace the statutory limitations that Congress crafted. Here, we hold that Waldron-Ramsey was not adequately diligent in filing his petition, which was 340 days late. He therefore is not entitled to equitable tolling.

**AFFIRMED**